David M. Goodrich, State Bar No. 208675
dgoodrich@go2.law
Anerio V. Altman, State Bar No. 228445
aaltman@go2.law
**GOLDEN GOODRICH LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Telephone 714-966-1000
Facsimile 714-966-1002

Proposed Counsel for John J. Menchaca,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>R&LS INVESTMENTS, INC.,<br><br>Debtor. | Case No. 2:23-bk-14467-WB<br><br>Chapter 7<br><br>**EMERGENCY MOTION FOR ORDER:**<br>**(1) REJECTING UNEXPIRED REAL PROPERTY LEASES PURSUANT TO 11 U.S.C. § 365;**<br>**(2) REJECTING EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365;**<br>**(3) ASSUMING AND ASSIGNING AGREEMENTS PURSUANT TO 11 U.S.C. §§ 365 AND 107;**<br>**(4) ALLOWING TRANSACTIONS IN ESCROW TO PROCESS;**<br>**(5) CLOSING THE DEBTOR'S BUSINESS; AND**<br>**(6) ABANDONING REMAINING PERSONAL PROPERTY AND THE ESTATE'S POSSESSORY INTEREST IN REAL PROPERTY PURSUANT TO 11 U.S.C. § 554(a);**<br>**MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JOHN J. MENCHACA IN SUPPORT THEREOF**<br><br>DATE: TO BE SET BY COURT<br>TIME: TO BE SET BY COURT<br>PLACE: Courtroom 1375<br>255 E. Temple Street<br>Los Angeles, California 90012 |



Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND DEBTOR'S COUNSEL, DE CORAL PLAZA, LLC AND ITS COUNSEL, GOLD COAST WEST, LLC AND ITS COUNSEL, AND ALL PARTIES IN INTEREST:**

John J. Menchaca, the duly appointed, qualified and acting chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of R&LS Investments, Inc. ("Debtor"), files this *Emergency Motion for Order: (1) Rejecting Unexpired Real Property Leases Pursuant to 11 U.S.C. § 365; (2) Rejecting Executory Contracts Pursuant to 11 U.S.C. § 365; (3) Assuming and Assigning Agreements Pursuant to 11 U.S.C. §§ 365 and 107; (4) Allowing Transactions in Escrow to Process; (5) Closing the Debtor's Business; and (6) Abandoning Personal Property and the Estate's Possessory Interest in Real Property Pursuant to 11 U.S.C. § 554(a)* ("Motion").

In support of the Motion, the Trustee submits the following memorandum of points and authorities and his declaration ("Menchaca Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Trustee has determined that the Debtor's brokerage business, including an escrow service, should not be operated in order to (1) avoid or limit potential chapter 7 administrative claims, (2) shift in-house escrow duties to a third party, and (3) to maximize the value of Estate assets. The Trustee seeks an order from this Court authorizing the Trustee to reject two leases of office space in Brentwood and Santa Monica and to reject all broker/agent contracts. The Trustee also seeks an order assuming and assigning 3 open escrow agreements to another escrow company. The Trustee also requests an order to allow third-party escrows holding contingent brokerage fees to close without further order of the Court. Finally, the Trustee seeks an order authorizing the Trustee to close the Debtor's business and abandon certain personal property remaining at the leased premises and the Estate's possessory interest in real property. Accordingly, the Trustee respectfully requests that the Motion be granted.

## II. STATEMENT OF FACTS

### A. General Background

On July 18, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, case no. 2:23-bk-14467-WB ("Case"). *See* Docket No. 1.[1] On July 20, 2023, Moriah Douglas Flahaut was appointed as the subchapter V Trustee ("Trustee").

On August 1, 2023, the Debtor filed its schedules ("Schedules"), a Statement of Financial Affairs ("SOFA") and related documents. *See* Docket No. 10. The Debtor scheduled $313,971.67 in assets, $501,208.18 in deposits, and $21,539.20 in accounts receivable. The Debtor scheduled no secured claims, no priority unsecured claims, and $682,378.08 in nonpriority unsecured claims. The Trustee learned during his investigation that a debt of approximately $15,000 in favor of the U.S. Small Business Administration is secured against all assets of the Debtor.

On October 16, 2023, the Debtor filed amended schedules ("Amended Schedules"). *See* Docket No. 37. The Amended Schedules reflect $288,811.97 in assets, $501,208.18 in deposits and $481,117.32 in nonpriority unsecured claims.

The Debtor is a real estate brokerage business ("Business"), wholly owned by its sole shareholder, Richard Cunningham. The Debtor operates under several names, including “Keller Williams Realty Santa Monica.” As of the Petition Date, the Debtor had four leased office locations and 432 commercial and/or residential real estate agents. According to the SOFA, the gross income of the Business for calendar years 2021 and 2022 was $43,199,408.49 and $46,187,707.94, respectively. From January 1, 2023, to the Petition Date, the gross income of the Business was $13,643,058.15.

---

[1] The Trustee requests the Court take judicial notice of its docket, the date of filing of pleadings on its docket and admissions of the Debtor in its schedules and related documents.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

In addition to the Business, the Debtor operates an "in-house" escrow service ("Escrow Company"). The Escrow Company has 3 pending escrows with an expected fee of $17,246. .

On March 3, 3025, the Court entered an order converting the Case to chapter 7 ("Conversion Date"). *See* Docket No. 339. On March 5, 2025, the Trustee filed his acceptance of appointment as chapter 7 trustee. *See* Docket No. 340.

Shortly after his appointment, the Trustee and his proposed counsel toured the Debtor's leased office locations (together, "Premises") at 11812 San Vicente Blvd, Los Angeles, California 90049 ("Brentwood"), and 444 Washington Blvd, Marina Del Rey, California 90292 ("Marina del Rey"), analyzed the operations and financial condition of the Business, and met with management and key employees. Initially, the Trustee determined that the best opportunity to maximize distributions to the Estate's creditors may be to operate the Business for a period of time until it can be sold.[2] Upon further investigation, the Trustee determined that the Business, including the Escrow Company, should be closed.

### B. Executory Contracts, Unexpired Real Property Leases and Broker/Agent Contracts

The Debtor is a party to the following executory contracts and unexpired leases (collectively, "Agreements"):[3]

| Contract or Lease | Contract Holder or Landlord | Expiration |
|---|---|---|
| Office space lease at 11812 San Vicente Boulevard, Suites 100, 125, 130, Los Angeles, California. 90049 ("Brentwood Lease") | De Coral Plaza, LLC<br>11726 San Vicente Blvd, Ste 225<br>Los Angeles, CA 90049 | |
| Office space lease at 444 Washington Boulevard, Marina del Rey, California | Gold Coast West, LLC<br>13737 Fiji Way, C-10 | |

[2] The Trustee operated the Business pursuant to LBR 2070-1(a).

[3] On March 19, 2025, the Trustee filed his *Motion to Extend Time to Assume or Reject Contracts and Nonresidential Real Property Leases Pursuant to 11 U.S.C. 11 U.S.C. § 365(d)(4)* ("Motion to Extend") [Docket No. 353] by which the Trustee **Error! Main Document Only.**requests a 90-day extension of the deadline to assume or reject the Agreements, from May 2, 2025, through July 31, 2025. Hearing on the Motion to Extend is set for April 17, 2025.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

| | | |
|---|---|---|
| 90292 ("Santa Monica Lease") | Marina Del Rey, CA 90292 | |
| Independent Contractor Agreement Without Arbitration (Between Broker and Associate-Licensee) | Various real estate agents (agents and addresses are listed in proof of service of the notice for this Motion). | |

- The Brentwood Lease covers Suites 100, 125 and 130 at 11812 San Vicente Boulevard, Los Angeles, California. 90049, for a total of approximately 11,607 square feet of office space.

- The Santa Monica Lease covers approximately 4,600 square feet of office space at 444 Washington Blvd, Marina Del Rey, California 90292. The Brentwood Lease and the Santa Monica Lease are referred to as "Leases."

A true and correct copy of the Debtor's Amended Schedule G is attached as **Exhibit 1**. The aggregate monthly rent due under the Leases is $46,655.00 *See* Menchaca Dec.

The Debtor also is a party to numerous *Independent Contractor Agreement Without Arbitration (Between Broker and Associate-Licensee)* with real estate agents that perform services for the Debtor (together, "Broker/Agent Contracts").

**C. <u>Open Escrow Agreements Where Debtor is the Escrow Agent</u>**

In addition to the Leases and the Broker/Agent Contracts, there are three open escrow agreements with the Escrow Company ("Escrow Agreements"). The Escrow Agreements are not in default. The Trustee seeks to assume the Escrow Agreements and assign them to Lawyers Title. To the Trustee's knowledge, Lawyers Title has sufficient resources to provide adequate assurances of future performance.

**D. <u>Pending Escrows Where Debtor is the Broker</u>**

The Trustee seeks authority to authorize all escrows in which the Debtor is the broker of record for a buyer, seller, or both, to close with funds due to the Debtor paid to the Trustee from escrow with the remainder of funds paid to third parties such as the seller, mortgage companies for sellers, the city, county and state for taxes, the escrow fee due to the escrow holder, any cost for title or other insurance, and any earned broker fee for brokers involved in each transaction. The Trustee believes that the property held in

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

escrow is not property of the Estate and, therefore, the automatic stay and turnover provisions of §§ 362(a) and 542(a) are not implicated.

**E. Closing the Business**

Following the Trustee and his counsel's investigation of the Business, the Trustee determined that the Business should be closed because the liabilities and potential liabilities outweigh the income and benefit of the Business. The Trustee has investigated the value of the Business as a going concern and the net return from a potential sale of the Business just not justify the continued operations of the Business.

**F. Remaining Personal Property and the Estate's Possessory Interest in the Premises**

When the Trustee toured the Premises, there did not appear to be any office equipment or furnishings of value that would warrant expending Estate resources on a bulk sale or auction of personal property. The Debtor scheduled office furnishings, fixtures and equipment with a stated value of $0. A true and correct copy of the relevant portion of the Debtor's Amended Schedule A/B is attached as **Exhibit 2**.

## III. LEGAL ARGUMENT

**A. The Leases and Broker/Agent Contracts May be Rejected Pursuant to 11 U.S.C. § 365**

Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a trustee or debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." *See* 11 U.S.C. § 365(a). This provision allows a debtor-in-possession "to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *See Stewart Title Guar.* Co. *v. Old Republic Nat'l Title* Co., 83 F.3d 735, 741 (5th Cir. 1996) (quoting *Phoenix Exploration, Inc. v. Yaquinto* (citing *In re Muerexco Petroleum, Inc.,* 15 F.3d 60, 62 (5th Cir. 1994)).

Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take



Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

such action will benefit the debtor's estates and is an exercise of sound business judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1098 (2d Cir. 1993) (stating that section 365 of the Bankruptcy Code "permits the trustee or debtor-in possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."). *In re Old* Carco *LLC (f/k/a Chrysler LLC),* 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) ("The business judgment standard is employed by courts in determining whether to permit a debtor to assume or reject a contract."). A bankruptcy court, in making its determination of whether to approve rejection of a contract, need engage in "only a cursory review of a [debtor-in-possession]'s decision to reject the contract. Specifically a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s rejection decision." *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (quoting *Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000).

The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the trustee or debtor-in-possession. If the trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See NLRB v. Bildisco* & *Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."). In evaluating a rejection decision under the business judgment standard, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate. *In re Pomona Valley Medical Group Inc.*, 476 F.3d at 670.

Rejection of an executory contract or unexpired lease is appropriate where rejection of the contract would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel*

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

*Gas Distribution Corp.,* 872 F.2d 36, 39 (3d Cir. 1989). The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Finance, Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.),* 47 B.R. 425, 427 (D. Haw. 1985) ("Under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

The business judgment test provides a flexible standard for determining whether a debtor may reject an executory contract or unexpired lease. The inquiry focuses on the benefit to the debtor estate resulting from the rejection rather than the mere unprofitability of the contract. *See In re Minges,* 602 F.2d 38, 43 (3d Cir. 1979). A bankruptcy court should approve the rejection of an executory contract unless it finds that the debtor-in-possession's conclusion that rejection would be advantageous is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *In re Pomona Valley Medical Group, Inc.*, 476 F.3d at 671 (quoting *Lubrizol Enter. V. Richmond Metal Finishers*, 765 F.2d 1043, 1047 (4th Cir. 1985).

As set forth in the Menchaca Decl., the Trustee, in the exercise of his business judgment, has determined that rejection of the Brentwood Lease, the Santa Monica Lease and the Broker/Agent Contracts is in the best interest of the Estate. The Trustee intends to close the Business on March 28, 2025, at which time the Debtor and the Trustee will vacate the Premises. By rejecting the Brentwood Lease and the Santa Monica Lease, the Trustee is limiting potential claims for monthly rent of $46,655 that could diminish distributions to creditors. Without operations, the two leases have no value for the Estate. Likewise, without operations, the Broker/Agent Contracts have no value for the Estate. Moreover, there are several pending lawsuits against agents that may require the Estate pay some of the agents' legal fees and costs on a monthly basis. If unpaid, legal counsel may withdraw and these fees and costs might be claimed by the agents' and their counsel as administrative claims. Accordingly, the Trustee believes it is in its best interest of the

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Estate to reject the Brentwood Lease, the Santa Monica Lease and the Broker/Agent Contracts immediately upon entry of the order granting this Motion.

**B. The Escrow Agreements May be Assumed and Assigned Pursuant to 11 U.S.C. §§ 365 and 107**

Sections 365(a) and 107(a) of the Bankruptcy Code authorize a trustee "'[to] assume or reject any executory contract or unexpired lease of the debtor." A trustee's decision whether to assume or reject is judged by the "business judgment test," which generally requires the trustee acted in good faith and with the honest belief that such actions were in the best interests of the estate. *See In re Pomona Valley Medical Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). The Court "need engage in 'only a cursory review of the [trustee]'s decision…'" and should approve the decision unless it finds that the decision is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Id.*

Pursuant to § 365(f)(2), a trustee may assign the debtor's executory contracts and unexpired leases, provided he or she first assumes those agreements in accordance with § 365(b)(1), and provides adequate assurance of future performance by the assignee. § 365(b)(1) of the Bankruptcy Code, in turn, requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1); *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (B.A.P. 9th Cir. 1993).

The Escrow Company is acting as a fiduciary with funds from sale transactions on deposit in the Debtor's debtor-in-possession account. *See* Menchaca Dec. Although the funds on hand at the Escrow Company are property of third parties, the Trustee bears the responsibility of approving all disbursements and the Estate bears the consequence of any errors made in disbursements. More importantly, escrow companies are often required to send payments to parties by wire or ACH – both are processes that may be

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

problematic for the Trustee holding trustee deposit accounts for this case. The amount the Estate will receive is not significant enough for the Trustee to act as an escrow agent.

"[N]othwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection." 11 U.S.C. § 365(f)(1); *see, e.g., Crow Winthrop Development Limited Partnership v. Jamboree LLC (In re Crow Winthrop Operating Partnership)*, 241 F.3d 1121, 1123 (9th Cir. 2001). Under section 365(f)(2) of the Bankruptcy Code, (A) the trustee must assume the contract; and (B) adequate assurance of future performance must be provided by the assignee. *See* 11 U.S.C. § 365(f)(2).

The Trustee is unaware of any anti-assignment clauses in the Escrow Agreements to be assumed and assigned. To the extent such clause exists, it is void under 11 U.S.C. § 365(f) and the Trustee may assume and assign the Escrow Agreements notwithstanding any contrary provision. The Trustee intends to assign the Estate's interest in the Escrow Agreements to another escrow company(ies) to the maximum extent allowable by law.

### C. **<u>The Court Should Authorize Ordinary Course Transactions to Proceed Without Further Court Order</u>**

Section 362(a)(3) stays an act against property of a bankruptcy estate. See 11 U.S.C. § 362(a). Further, Section 542(a) requires property of a bankruptcy estate to be turned over to a debtor-in-possession or a trustee.

As the broker of record for several transactions, the Debtor holds a contingent interest in broker fees to be paid from escrow accounts held by third-party escrow companies. Although the Trustee believes any commission due to the Debtor is not earned until close of escrow, money held for the benefit of the Debtor and Estate could be deemed Estate property protected by the automatic stay. The Trustee believes it will be more efficient if the Court enters an order allowing each transaction held in escrow by third-party escrow holders to close without the need for further Court order so that any concerns pertaining to §§ 362(a) are alleviated.

Further, the Trustee contends that if the Court enters an order rejecting the Broker/Agent Contracts, any broker fee due to the Debtor should be turned over to the Trustee and not the Debtor's agents because it constitutes property of the Estate. Based upon this contention, the Trustee requests the Court enter an order for the turnover of any broker fee due to the Debtor to the Trustee on a prospective basis.

**D. The Court Should Authorize the Trustee to Close the Business**

The Trustee has thoroughly investigated the viability of the Business and after careful consideration and consultation with his lawyers and accountants, the Trustee believes it is in the best interests of the Estate and its creditors to close the Business. The Business liabilities, which include monthly obligations for rent, payroll, legal fees for defending agents sued in their representative capacity of the Debtor, and potential royalty fees owed to Keller Williams, outweigh the benefit of operating the Business and marketing the Business for sale as an ongoing concern. And although the Trustee does not necessarily need an order of the Court permitting the closing of the Business, the Trustee seeks an order from the Court out of an abundance of caution. As such, the Court should grant the Motion to the extent is seeks authority to close the Business.

**E. Any Remaining Personal Property and the Estate's Possessory Interest in the Leases May be Abandoned Pursuant to 11 U.S.C. § 554**

Bankruptcy trustees have a duty to avoid administering property that will not generate funds for unsecured parties. *In re MCI, Inc.*, 151 B.R. 103, 110 (E.D. Mich. 1992). Section 554 provides that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." To order abandonment, a court must find either (1) the property is burdensome to the estate, or (2) the property is both of inconsequential value and inconsequential benefit to the estate. *See In re K.C. Machine and Tool Company,* 816 F.2d 238, 245 (6th Cir. 1987).

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Here, any miscellaneous personal property remaining at the Premises is of no value or benefit to the Estate.[4] Accordingly, the Trustee respectfully requests that an order be entered allowing the Trustee to abandon any such personal property along with the Estate's possessory interest in the Premises.

## IV. CONCLUSION

Based upon the foregoing, the Trustee respectfully requests an order as follows:

1. Granting this Motion;

2. Authorizing the Trustee to reject the Leases and the Broker/Agent Contracts;

3. Approving the Trustee's assumption of the Escrow Agreements and authorizing the Trustee to assign the Escrow Agreements to Lawyers Title;

4. Allowing all transactions in escrow held by the Debtor to process without further order of the Court and at the Trustee's discretion;

5. Authorizing third-party escrow to close without further Court order;

6. Deeming transactions that process in third-party escrow accounts to not violate the automatic stay;

7. Ordering all escrow agents holding earned broker fees owed to the Debtor to tender payment of earned broker fees to the Trustee;

8. Authorizing the Trustee to close the Debtor's Business, including the Escrow Company, effective March 28, 2025;

9. Authorizing the Trustee to immediately abandon personal property at the Premises and the Estate's possessory interest in the Leases pursuant to 11 U.S.C. § 554(a); and

10. For such other and further relief as the Court deems just and proper.

[4] The Trustee is not seeking authority to abandon computers and servers of the Debtor that contain financial and transaction records of the Debtor.

Respectfully submitted,

Dated: March 28, 2025

GOLDEN GOODRICH LLP

By: */s/ David M. Goodrich*
DAVID M. GOODRICH
ANERIO V. ALTMAN
Proposed Attorneys for Chapter 7
Trustee John J. Menchaca

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**DECLARATION OF JOHN J. MENCHACA**

I, John J. Menchaca, declare as follows:

1. I am the duly appointed chapter 7 Trustee for the bankruptcy estate of R&LS Investments, Inc. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Motion for Order: (1) Rejecting Unexpired Real Property Leases Pursuant to 11 U.S.C. § 365; (2) Rejecting Executory Contracts Pursuant to 11 U.S.C. § 365; (3) Assuming and Assigning Agreements Pursuant to 11 U.S.C. §§ 365 and 107; (4) Allowing Transactions in Escrow to Process; (5) Closing the Debtor's Business; and (6) Abandoning Personal Property and the Estate's Possessory Interest in Real Property Pursuant to 11 U.S.C. § 554(a)* ("Motion"). Any terms not specifically defined herein shall have the meaning set forth in the Motion.

2. According to the proceedings docket:

a. On July 18, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, case no. 2:23-bk-14467-WB ("Case"). On July 20, 2023, Moriah Douglas Flahaut was appointed as the subchapter V Trustee ("Trustee").

b. On August 1, 2023, the Debtor filed its schedules ("Schedules"), a Statement of Financial Affairs ("SOFA") and related documents. The Debtor scheduled $313,971.67 in financial assets, $501,208.18 in deposits, and $21,539.20 in accounts receivable. The Debtor scheduled no secured claims, no priority unsecured claims, and $682,378.08 in nonpriority unsecured claims. I learned during my investigation that a debt of approximately $15,000 in favor of the U.S. Small Business Administration is secured against all assets of the Debtor.

c. On October 16, 2023, the Debtor filed amended schedules ("Amended Schedules"). The Amended Schedules reflect $288,811.97 in assets, $501,208.18 in deposits and $481,117.32 in nonpriority unsecured claims.

d. On March 3, 3025, the Court entered an order converting the Case to chapter 7. On March 5, 2025, I filed my acceptance of appointment as chapter 7 Trustee.

3. A true and correct copy of the Amended Schedule G is attached as **Exhibit 1**.

4. The Debtor is a real estate brokerage business ("Business"), wholly owned by its sole shareholder, Richard Cunningham. The Debtor operates under several names, including “Keller Williams Realty Santa Monica.”

6. As of the Petition Date, the Debtor had four leased office locations and 432 commercial and/or residential real estate agents. According to the SOFA, the gross income of the Business for calendar years 2021 and 2022 was $43,199,408.49 and $46,187,707.94, respectively. From January 1, 2023, to the Petition Date, the gross income of the Business was $13,643,058.15.

7. In addition to the Business, the Debtor operates an “in-house” escrow service ("Escrow Company"). The Escrow Company has 3 pending escrows with an expected fee of $17,246.

8. Shortly after my appointment, my proposed counsel and I toured the Debtor’s leased office locations (together, "Premises") at 11812 San Vicente Blvd, Los Angeles, California 90049 ("Brentwood"), and 444 Washington Blvd, Marina Del Rey, California 90292 ("Marina del Rey"), analyzed the operations and financial condition of the Business, and met with management and key employees.

9. Initially, I determined that the best opportunity to maximize distributions to the Estate’s creditors may be to operate the Business for a period of time until it can be sold.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

10. On March 19, 2025, my counsel filed a *Motion to Extend Time to Assume or Reject Contracts and Nonresidential Real Property Leases Pursuant to 11 U.S.C. 11 U.S.C. § 365(d)(4)* ("Motion to Extend") [Docket No. 353] to be filed. A hearing on the Motion to Extend is set for April 17, 2025.

11. The aggregate monthly rent due under the Leases is $46,655.00.

12. The Debtor also is a party to numerous *Independent Contractor Agreement Without Arbitration (Between Broker and Associate-Licensee)* with real estate agents that perform services for the Debtor (together, "Broker/Agent Contracts").

13. Attached hereto as **Exhibit 3** is a true and correct copy of the template used for Broker/Agent Contracts.

14. In addition to the Leases and the Broker/Agent Contracts, there are three open escrow agreements with the Escrow Company ("Escrow Agreements"). The Escrow Agreements are not in default. I propose an assumption and assignment of the Escrow Agreements to Lawyers Title. To my knowledge, Lawyers Title has sufficient resources to provide adequate assurances of future performance.

15. I seek authority to authorize all escrows in which the Debtor is the broker of record for a buyer, seller, or both, to close with funds due to the Debtor paid to me for the benefit of the Estate from escrow with the remainder of funds paid to third parties such as the seller, mortgage companies for sellers, the city, county and state for taxes, the escrow fee due to the escrow holder, any cost for title or other insurance, and any earned broker fee for brokers involved in each transaction.

16. It appears that the property held in escrow is not property of the Estate and, therefore, the automatic stay and turnover provisions of §§ 362(a) and 542(a) are not implicated.

17. Following our investigation of the Business, I determined that the Business should be closed because the liabilities and potential liabilities outweigh the income and benefit of the Business.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

18. I investigated the value of the Business as a going concern and the net return from a potential sale of the Business just not justify the continued operations of the Business.

19. When I toured the Premises, there did not appear to be any office equipment or furnishings of value that would warrant expending Estate resources on a bulk sale or auction of personal property.

20. The Debtor scheduled office furnishings, fixtures and equipment with a stated value of $0.

21. A true and correct copy of the relevant portion of the Debtor's Amended Schedule A/B is attached as **Exhibit 2**.

22. I do not intend to abandon any personal property of the Debtor that contains financial and transactional records of the Debtor.

23. I intend to close the Business on March 28, 2025 and vacate the Brentwood and Marina del Rey premises.

24. I am not aware of any anti-assignment clauses in the Escrow Agreements.

25. As the broker of record for several transactions, the Debtor holds a contingent interest in broker fees to be paid from escrow accounts held by third-party escrow companies.

26 It appears commissions due to the Debtor are not earned until close of escrow. These commissions may constitute Estate property before the close of escrow.

27. I believe it will be more efficient if the Court enters an order allowing each transaction held in escrow by third-party escrow holders to close without the need for further Court order so that any concerns pertaining to §§ 362(a) are alleviated.

28. I believe that if the Court enters an order rejecting the Broker/Agent Contracts, any broker fee due to the Debtor should be turned over to me for the benefit of creditors and not the Debtor's agents because the commissions constitute property of the Estate.

/ / /

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

29. I request the Court enter an order for the turnover of any broker fee due to the Debtor to the me on a prospective basis.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of March, 2025.

John J. Menchaca

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# Exhibit 1

**Fill in this information to identify the case:**

Debtor name **R&LS Investments, Inc.**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number (if known) **2:23-bk-14467-WB**

☒ Check if this is an amended filing

# Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

**12/15**

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.**

1. **Does the debtor have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Office space lease at 845 Via De La Paz Pacific Palisades, CA 90272** | |
| | State the term remaining | **9/30/2026** | **843 Via de la Paz, LLC**<br>**845 Via de la Paz, #1**<br>**Pacific Palisades, CA 90272** |
| | List the contract number of any government contract | | |
| 2.2. | State what the contract or lease is for and the nature of the debtor's interest | **sublease wherein debtor is sublessor** | |
| | State the term remaining | **8/31/2026** | **Abundant Success LLC**<br>**847 Via de la Paz**<br>**Pacific Palisades, CA 90272** |
| | List the contract number of any government contract | | |
| 2.3. | State what the contract or lease is for and the nature of the debtor's interest | **Commercial Real Property Listing Service** | |
| | State the term remaining | | **Co-Star Realty Information**<br>**PO Box 791123**<br>**Baltimore, MD 21279** |
| | List the contract number of any government contract | | |
| 2.4. | State what the contract or lease is for and the nature of the debtor's interest | **Office space lease at 11812 San Vicente Blvd Ste 100, Los Angeles, CA 90049** | |
| | State the term remaining | **9/30/2024** | **De Coral Plaza, LLC**<br>**11726 San Vicente Blvd**<br>**Suite 225**<br>**Los Angeles, CA 90049** |
| | List the contract number of any government contract | | |

Debtor 1 **R&LS Investments, Inc.** (First Name / Middle Name / Last Name) Case number (*if known*) **2:23-bk-14467-WB**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **Marina Del Rey Copier Machine Lease (1 copier) expires 4/2024** | |
| | State the term remaining | | **De Lage Landen Financial Service**<br>**PO Box 41602**<br>**Philadelphia, PA 19101** |
| | List the contract number of any government contract | | |
| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Pacific Palisades Copier Machine Lease (1 copier) expires 3/2024** | |
| | State the term remaining | | **De Lage Landen Financial Service**<br>**PO Box 41602**<br>**Philadelphia, PA 19101** |
| | List the contract number of any government contract | | |
| 2.7. | State what the contract or lease is for and the nature of the debtor's interest | **Office space lease at 444 Washington Blvd, Marina Del Rey, CA 90292** | |
| | State the term remaining | **9/30/2024** | **Gold Coast West, LLC**<br>**13737 Fiji Way**<br>**C-10**<br>**Marina Del Rey, CA 90292** |
| | List the contract number of any government contract | | |
| 2.8. | State what the contract or lease is for and the nature of the debtor's interest | **Keller Williams Franchise License Agreement** | |
| | State the term remaining | **4/26/2030** | **Keller Williams Realty, Inc.**<br>**1221 South Mopac Expressway**<br>**Suite 110**<br>**Austin, TX 78746** |
| | List the contract number of any government contract | | |
| 2.9. | State what the contract or lease is for and the nature of the debtor's interest | **Santa Monica Copier Machine Lease (2 copiers) expires 3/2025** | |
| | State the term remaining | | **Konica Minolta**<br>**PO Box 100706**<br>**Pasadena, CA 91189** |
| | List the contract number of any government contract | | |



**EXHIBIT 1, PAGE 20**

Debtor 1 **R&LS Investments, Inc.** Case number (*if known*) **2:23-bk-14467-WB**
First Name Middle Name Last Name

## Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|---|
| 2.10. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Office space lease at 2701 Ocean Park Blvd Ste 140 Santa Monica, CA 90405** | **Ocean Park Two, LLC**<br>**660 S. Figueroa St.**<br>**7th Floor**<br>**Los Angeles, CA 90017** |
| 2.11. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Brentwood Copier Machine Lease (2 copiers) expires 11/2023**<br>**11/2023** | **Wells Fargo Financial**<br>**PO Box 030310**<br>**Los Angeles, CA 90030** |



**EXHIBIT 1, PAGE 21**

# Exhibit 2

Debtor **R&LS Investments, Inc.** Case number *(If known)* **2:23-bk-14467-WB**
Name

**Part 5: Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

**Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7: Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
■ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture**<br>**Couches 4**<br>**Desks 75**<br>**Lounge Chairs 12**<br>**Desk Chairs 115**<br>**Cabinets 10** | **Unknown** | | **Unknown** |
| 40. | **Office fixtures**<br>**Cubicle Desks 20**<br>**Shelving 10**<br>**Decorative Items 100**<br>**Refridgerators 3** | **Unknown** | | **Unknown** |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software**<br>**Desktop Computers 13**<br>**Non-Leased Printers 5**<br>**Office Phones 75**<br>**Owner Copiers 2**<br>**Supplies (various items)**<br>**Binding Machines 2** | **Unknown** | | **Unknown** |

42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collect bles

43. **Total of Part 7.** **$0.00**
Add lines 39 through 42. Copy the total to line 86.

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
☐ No
■ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**



**EXHIBIT 2, PAGE 22**

# Exhibit 3

CALIFORNIA ASSOCIATION OF REALTORS®

# INDEPENDENT CONTRACTOR AGREEMENT WITHOUT ARBITRATION
## (Between Broker and Associate-Licensee)
**(C.A.R. Form ICA-NA, 4/15)**

This Agreement, dated ______________, is made between *R & L Investments Inc.* ("Broker") and Malgorzata Ashby ("Associate-Licensee").

In consideration of the covenants and representations contained in this Agreement, Broker and Associate-Licensee agree as follows:

1. **BROKER:** Broker represents that Broker is duly licensed as a real estate broker by the State of California, [X] doing business as *Keller Williams Santa Monica / Palisades* (firm name), [ ] a sole proprietorship, [ ] a partnership, or [X] a corporation. Broker is a member of the *Beverly Hills Greater Los Angeles, Malibu and Southland Regional* Association(s) of REALTORS®, and a participant to the *Combined LA/Westside* Multiple Listing Service(s). Broker shall keep Broker's license current during the term of this Agreement.
2. **ASSOCIATE-LICENSEE:** Associate-Licensee represents that: **(i)** he/she is duly licensed by the State of California as a [ ] real estate broker, [ ] real estate salesperson, and **(ii)** he/she has not used any other names within the past five years, except ______________. Associate-Licensee shall keep his/her license current during the term of this Agreement, including satisfying all applicable continuing education and provisional license requirements.
3. **INDEPENDENT CONTRACTOR RELATIONSHIP:**
   - **A.** Broker and Associate-Licensee intend that, to the maximum extent permissible by law: **(i)** This Agreement does not constitute an employment agreement by either party; **(ii)** Broker and Associate-Licensee are independent contracting parties with respect to all services rendered under this Agreement; and **(iii)** This Agreement shall not be construed as a partnership.
   - **B.** Broker shall not: **(i)** restrict Associate-Licensee's activities to particular geographical areas, or **(ii)** dictate Associate-Licensee's activities with regard to hours, leads, open houses, opportunity or floor time, production, prospects, sales meetings, schedule, inventory, time off, vacation, or similar activities, except to the extent required by law.
   - **C.** Associate-Licensee shall not be required to accept an assignment by Broker to service any particular current or prospective listing or parties.
   - **D.** Except as required by law: **(i)** Associate-Licensee retains sole and absolute discretion and judgment in the methods, techniques, and procedures to be used in soliciting and obtaining listings, sales, exchanges, leases, rentals, or other transactions, and in carrying out Associate-Licensee's selling and soliciting activities; **(ii)** Associate-Licensee is under the control of Broker as to the results of Associate-Licensee's work only, and not as to the means by which those results are accomplished; **(iii)** Associate-Licensee has no authority to bind Broker by any promise or representation; and **(iv)** Broker shall not be liable for any obligation or liability incurred by Associate-Licensee.
   - **E.** Associate-Licensee's only remuneration shall be the compensation specified in paragraph 8.
   - **F.** Associate-Licensee who only performs as a real estate sales agent, shall not be treated as an employee for state and federal tax purposes. However, an Associate-Licensee who performs loan activity shall be treated as an employee for state and federal tax purposes unless the activity satisfies the legal requirements to establish an independent contractor relationship.
   - **G.** The fact the Broker may carry workers' compensation insurance for Broker's own benefit and for the mutual benefit of Broker and licensees associated with Broker, including Associate-Licensee, shall not create an inference of employment. (Workers' Compensation Advisory: Even though a Real Estate salesperson may be treated as independent contractors for tax and other purposes, the California Labor and Workforce Development Agency considers them to be employees for workers' compensation purposes. According to that Agency: **(i)** Broker must obtain workers' compensation insurance for a real estate salesperson and **(ii)** Broker, not a Real Estate sales person, must bear the cost of workers' compensation insurance. Penalties for failure to carry workers' compensation include, among others, the issuance of stop-work orders and fines of up to $1,000 per agent, not to exceed $100,000 per company.)
4. **LICENSED ACTIVITY:**
   - **A.** All listings of property, and all agreements, acts or actions for performance of licensed acts, which are taken or performed in connection with this Agreement, shall be taken and performed in the name of Broker. Associate-Licensee agrees to and does hereby contribute all right and title to such listings to Broker for the benefit and use of Broker, Associate-Licensee, and other licensees associated with Broker.
   - **B.** Broker shall make available to Associate-Licensee, equally with other licensees associated with Broker, all current listings in Broker's office, except any listing which Broker may choose to place in the exclusive servicing of Associate-Licensee or one or more other specific licensees associated with Broker.

Broker's Initials (________) Associate-Licensee's Initials (________)

© 2015, California Association of REALTORS®, Inc.



Keller Williams Realty -S.M., 2701 Ocean Park Bl., Ste. 140 Santa Monica, CA 90405 Phone: 310.482.2167 Fax: 310.482.2201 947 16th St. Unit 5
Malgorzata Ashby Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com

C. Associate-Licensee shall provide and pay for all professional licenses, supplies, services, and other items required in connection with Associate-Licensee's activities under this Agreement, or any listing or transaction, without reimbursement from Broker except as required by law.

D. Associate-Licensee shall work diligently and with his/her best efforts to: **(i)** sell, exchange, lease, or rent properties listed with Broker or other cooperating Brokers; **(ii)** solicit additional listings, clients, and customers; and **(iii)** otherwise promote the business of serving the public in real estate transactions to the end that Broker and Associate-Licensee may derive the greatest benefit possible, in accordance with law.

E. Associate-Licensee shall not commit any unlawful act under federal, state or local law or regulation while conducting licensed activity. Associate-Licensee shall at all times be familiar, and comply, with all applicable federal, state and local laws, including, but not limited to, anti-discrimination laws and restrictions against the giving or accepting a fee, or other thing of value, for the referral of business to title companies, escrow companies, home inspection companies, pest control companies and other settlement service providers pursuant to the California Business and Professions Code and the Real Estate Settlement Procedures Acts (RESPA).

F. Broker shall make available for Associate-Licensee's use, along with other licensees associated with Broker, the facilities of the real estate office operated by Broker at ______________________________
and the facilities of any other office locations made available by Broker pursuant to this Agreement.

G. **PROHIBITED ACTIVITIES:** Associate-Licensee agrees not to engage in any of the following Real Estate licensed activities without the express written consent of Broker:

☒ Property Management; ☒ Loan Brokerage ☒ Business Brokerage; ☒ ***See Addendum No.1***
☐ ______________________________

However, if Associate-Licensee has a Real Estate Broker's License, Associate-Licensee may nonetheless engage in the following prohibited activity(ies) only: ______________________________
provided that (1) such prohibited activities are not done under the Broker's License, (2) no facilities of Broker (including but not limited to phones, fax, computers, and office space) are used for any such prohibited activities, (3) Associate-Licensee shall not use any marketing, solicitation or contact information that include Broker's name (including business cards) for such prohibited activities, (4) Associate-Licensee informs any actual or intended Principal for whom Associate-Licensee performs or intends to perform such prohibited activities the name of the broker under whose license the prohibited activities are performed, and (5) if Associate-Licensee is performing other permitted licensed activity for that Principal under Broker's license, then Associate-Licensee shall inform any actual or intended Principal for whom the prohibited activities are performed that the prohibited activities are not performed under Broker's license.

5. **PROPRIETARY INFORMATION AND FILES:**

A. All files and documents pertaining to listings, leads and transactions are the property of Broker and shall be delivered to Broker by Associate-Licensee immediately upon request or termination of this Agreement.

B. Associate-Licensee acknowledges that Broker's method of conducting business is a protected trade secret.

C. Associate-Licensee shall not use to his/her own advantage, or the advantage of any other person, business, or entity, except as specifically agreed in writing, either during Associate-Licensee's association with Broker, or thereafter, any information gained for or from the business, or files of Broker.

6. **SUPERVISION:** Associate-Licensee, within 24 hours (or ☒ ***5 days*** ) after preparing, signing, or receiving same, shall submit to Broker, or Broker's designated licensee: **(i)** all documents which may have a material effect upon the rights and duties of principals in a transaction; **(ii)** any documents or other items connected with a transaction pursuant to this Agreement in the possession of or available to Associate Licensee; and **(iii)** all documents associated with any real estate transaction in which Associate-Licensee is a principal.

7. **TRUST FUNDS:** All trust funds shall be handled through the Broker's trust account and in compliance with the Business and Professions Code, and other applicable laws.

8. **COMPENSATION:**

A. **TO BROKER:** Compensation shall be charged to parties who enter into listing or other agreements for services requiring a real estate license:
☒ as shown in "Exhibit A" attached, which is incorporated as a part of this Agreement by reference, or
☐ as follows: ______________________________

Any deviation which is not approved in writing in advance by Broker, shall be: (1) deducted from Associate-Licensee's compensation, if lower than the amount or rate approved above; and, (2) subject to Broker approval, if higher than the amount approved above. Any permanent change in commission schedule shall be disseminated by Broker to Associate-Licensee.

B. **TO ASSOCIATE-LICENSEE:** Associate-Licensee shall receive a share of compensation actually collected by Broker, on listings or other agreements for services requiring a real estate license, which are solicited and obtained by Associate-Licensee, and on transactions of which Associate-Licensee's activities are the procuring cause, as follows:
☒ as shown in "Exhibit B" attached, which is incorporated as a part of this Agreement by reference, or
☐ other: ______________________________

Broker's Initials (________) Associate-Licensee's Initials (________)

C. **PARTNERS, TEAMS, AND AGREEMENTS WITH OTHER ASSOCIATE-LICENSEES IN OFFICE:** If Associate-Licensee and one or more other Associate-Licensees affiliated with Broker participate on the same side (either listing or selling) of a transaction, the commission allocated to their combined activities shall be divided by Broker and paid to them according to their written agreement. Broker shall have the right to withhold total compensation if there is a dispute between associate-licensees, or if there is no written agreement, or if no written agreement has been provided to Broker.

D. **EXPENSES AND OFFSETS:** If Broker elects to advance funds to pay expenses or liabilities of Associate-Licensee, or for an advance payment of, or draw upon, future compensation, Broker may deduct the full amount advanced from compensation payable to Associate-Licensee on any transaction without notice. If Associate-Licensee's compensation is subject to a lien, garnishment or other restriction on payment, Broker shall charge Associate-Licensee a fee for complying with such restriction.

E. **PAYMENT:** **(i)** All compensation collected by Broker and due to Associate-Licensee shall be paid to Associate-Licensee, after deduction of expenses and offsets, immediately or as soon thereafter as practicable, except as otherwise provided in this Agreement, or a separate written agreement between Broker and Associate-Licensee. **(ii)** Compensation shall not be paid to Associate-Licensee until both the transaction and file are complete. **(iii)** Broker is under no obligation to pursue collection of compensation from any person or entity responsible for payment. Associate-Licensee does not have the independent right to pursue collection of compensation for activities which require a real estate license which were done in the name of Broker. **(iv)** Expenses which are incurred in the attempt to collect compensation shall be paid by Broker and Associate-Licensee in the same proportion as set forth for the division of compensation (paragraph 8(B)). **(v)** If there is a known or pending claim against Broker or Associate-Licensee on transactions for which Associate-Licensee has not yet been paid, Broker may withhold from compensation due Associate-Licensee on that transaction amounts for which Associate-Licensee could be responsible under paragraph 14, until such claim is resolved. **(vi)** Associate-Licensee shall not be entitled to any advance payment from Broker upon future compensation.

F. **UPON OR AFTER TERMINATION:** If this Agreement is terminated while Associate-Licensee has listings or pending transactions that require further work normally rendered by Associate-Licensee, Broker shall make arrangements with another associate-licensee to perform the required work, or Broker shall perform the work him/herself. The licensee performing the work shall be reasonably compensated for completing work on those listings or transactions, and such reasonable compensation shall be deducted from Associate-Licensee's share of compensation. Except for such offset, Associate-Licensee shall receive the compensation due as specified above.

9. **TERMINATION OF RELATIONSHIP:** Broker or Associate-Licensee may terminate their relationship under this Agreement at any time, with or without cause. After termination, Associate-Licensee shall not solicit: **(i)** prospective or existing clients or customers based upon company-generated leads obtained during the time Associate-Licensee was affiliated with Broker; **(ii)** any principal with existing contractual obligations to Broker; or **(iii)** any principal with a contractual transactional obligation for which Broker is entitled to be compensated. Even after termination, this Agreement, inclusive of Paragraph 12, shall govern all disputes and claims between Broker and Associate-Licensee connected with their relationship under this Agreement, including obligations and liabilities arising from existing and completed listings, transactions, and services.

10. **AUTOMOBILE:** Associate-Licensee shall maintain automobile insurance coverage for liability and property damage in the following amounts $ *100,000.00* / $ *300,000.00* . Broker shall be named as an additional insured party on Associate-Licensee's policies. A copy of the endorsement showing Broker as an additional insured shall be provided to Broker.

11. **PERSONAL ASSISTANTS:** Associate-Licensee may make use of a personal assistant, provided the following requirements are satisfied. Associate-Licensee shall have a written agreement with the personal assistant which establishes the terms and responsibilities of the parties to the employment agreement, including, but not limited to, compensation, supervision and compliance with applicable law. The agreement shall be subject to Broker's review and approval. Unless otherwise agreed, if the personal assistant has a real estate license, that license must be provided to the Broker. Both Associate-Licensee and personal assistant must sign any agreement that Broker has established for such purposes.

12. **AGREEMENT TO MEDIATE DISPUTES:**

**(1)** Broker and Associate-Licensee agree to timely notify the other person and mediate all disputes and claims between them arising from or connected in any way with this Agreement before resorting to arbitration or court action.

**(2)** If any dispute or claim is not resolved through mediation, or otherwise, Broker and Associate-Licensee may mutually agree to submit disputes involving commissions for property transactions to binding arbitration by the procedures and rules set forth in the California Code of Ethics and Arbitration Manual, a copy of which is available at the following link: www.car.org/legal/calarbrules/.

Broker's Initials (_________) Associate-Licensee's Initials (_________)

**13. OFFICE POLICY MANUAL:** If Broker's office policy manual, now or as modified in the future, conflicts with or differs from the terms of this Agreement, the terms of the office policy manual shall govern the relationship between Broker and Associate-Licensee.

**14. INDEMNITY AND HOLD HARMLESS; NOTICE OF CLAIMS:**

**A.** Regarding any action taken or omitted by Associate-Licensee, or others working through, or on behalf of Associate-Licensee in connection with services rendered or to be rendered pursuant to this Agreement or real estate licensed activity prohibited by this agreement: **(i)** Associate-Licensee agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, awards, costs and attorney fees, arising therefrom and **(ii)** Associate-Licensee shall immediately notify Broker if Associate-Licensee is served with or becomes aware of a lawsuit or claim regarding any such action.

**B.** Any such claims or costs payable pursuant to this Agreement, are due as follows:
☐ Paid in full by Associate-Licensee, who hereby agrees to indemnify and hold harmless Broker for all such sums, or
☒ In the same ratio as the compensation split as it existed at the time the compensation was earned by Associate-Licensee ☐ Other: ***See also Exhibits A, B and C***
Payment from Associate-Licensee is due at the time Broker makes such payment and can be offset from any compensation due Associate-Licensee as above. Broker retains the authority to settle claims or disputes, whether or not Associate-Licensee consents to such settlement.

**15. ADDITIONAL PROVISIONS:** ***The Keller Williams Realty Inc. Policy & Guidelines (P&G) Manual and Broker's P&G Manual are incorporated into this Agreement and into Exhibits A, B and C***

**16. DEFINITIONS:** As used in this Agreement, the following terms have the meanings indicated:

**A.** "Listing" means an agreement with a property owner or other party to locate a buyer, exchange party, lessee, or other party to a transaction involving real property, a mobile home, or other property or transaction which may be brokered by a real estate licensee, or an agreement with a party to locate or negotiate for any such property or transaction.

**B.** "Compensation" means compensation for acts requiring a real estate license, regardless of whether calculated as a percentage of transaction price, flat fee, hourly rate, or in any other manner.

**C.** "Transaction" means a sale, exchange, lease, or rental of real property, a business opportunity, or a manufactured home, which may lawfully be brokered by a real estate licensee.

**17. ATTORNEY FEES:** In any action, proceeding, or arbitration between Broker and Associate-Licensee arising from or related to this Agreement, the prevailing Broker or Associate-Licensee shall be entitled to reasonable attorney fees and costs.

**18. ENTIRE AGREEMENT:** All prior agreements between the parties concerning their relationship as Broker and Associate-Licensee are incorporated in this Agreement, which constitutes the entire contract. Its terms are intended by the parties as a final and complete expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement may not be amended, modified, altered, or changed except by a further agreement in writing executed by Broker and Associate-Licensee.

**Broker:**

*Keller Williams Santa Monica / Palisades*
(Brokerage firm name)
By ____________________
Its ☒ Broker/ ☐ Office manager (check one)

*Malgorzata Ashby*
(Print name)

*2701 Ocean Park Blvd. Suite 140*
(Address)

*Santa Monica, CA 90405*
(City, State, Zip)

*(310)482-2144*
(Telephone) (Fax)

**Associate-Licensee:**

____________________
(Signature)

____________________
(Print name)

____________________
(Address)

____________________
(City, State, Zip)

____________________
(Telephone) (Fax)

Broker's Initials (__________) Associate-Licensee's Initials (__________)

© 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com 947 16th St. Unit 5